UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYN PATRICK,<br><br>              Plaintiff,<br><br>v.<br><br>HEWLETT-PACKARD COMPANY EMPLOYEE BENEFITS ORGANIZATION INCOME PROTECTION PLAN, etc.; et al.,<br><br>              Defendants. | Case No. 06-CV-1506-JMA (McC)<br><br>**ORDER: GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Doc. 78] AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. 90]** |

**I.      INTRODUCTION**

This ERISA case involves the issue of whether claims administrator Voluntary Plan Administrators, Inc. ("VPA"), acting on behalf of Defendants, abused its discretion in denying Plaintiff's claim for long-term disability ("LTD") benefits under the Hewlett-Packard Company Disability Plan ("the Plan"). On January 23, 2009, Plaintiff Lyn Patrick ("Patrick" or "Plaintiff") and Defendants Hewlett-Packard Company Employee Disability Plan and Hewlett-Packard Company ("HP" or "Defendants") filed cross-motions for summary judgment ("MSJ") [Docs. 78, 90]. On March 2, 2009, each party filed an opposition to the other side's motion for summary judgment [Doc. Nos. 97-104]. On March 2, 2009, Plaintiff filed an Objection to evidence submitted by Defendants [Doc. 98], to which Defendants responded on April 6, 2009 [Docs. 107-108]. Defendants filed

Objections to evidence submitted by Plaintiff on March 3, 2009 [Doc. 102].  On April 6, 2009, the parties filed replies in support of their motions for summary judgment [Docs. 108, 111].

On June 24, 2009, the Court heard oral argument on the parties' cross-motions for summary judgment.  Upon due consideration of the written and oral arguments of the parties and the record herein, the Court **GRANTS** Plaintiff's Motion for Summary Judgment [Doc. 78] and **DENIES** Defendants' Motion for Summary Judgment [Doc. 90]. The Court **OVERRULES** Plaintiff's Objections to evidence submitted by Defendants, [Doc. 98] and **SUSTAINS** Defendants' Objections to evidence submitted by Plaintiff. [Doc. 102].

**II.    BACKGROUND**

**A.    Factual Background**

Plaintiff Lyn Patrick worked for Hewlett-Packard for nearly 20 years as a senior technical and management employee. Declaration of Lyn Patrick filed in support of Plaintiff's MSJ [Doc. 82] ("Patrick Decl." ¶2).  On or about August 26, 2002, Plaintiff applied for, and began receiving, workers' compensation benefits and short-term disability benefits under the Plan due to right shoulder tendonitis, right forearm lateral epicondylitis ("tennis elbow") and right hand carpal tunnel syndrome.  Administrative Record ("AR") 286.[1]  The last day Patrick worked at HP due to her disabilities was August 23, 2002.  *Id.*  Pursuant to the terms of the Plan, Plaintiff was paid short-term disability benefits for one year, until August 24, 2003.  *See* Ex. A, §(o)(I) at 10 (providing that short-term disability be paid for a maximum of 52 weeks).

Before Plaintiff went on short-term disability, she was seen at least three times by Dr. Joan Collins in 2002 for pain in her shoulder, forearm, elbow and/or fingers.  AR 376-

---

[1] Defendants provided the Administrative Record ("AR") as Ex. C to their motion for summary judgment.  Defendants numbered their exhibits sequentially in the bottom right corner.  The Court will use these page numbers in providing citations to the AR.

06cv1506

1   78.[2]  From Patrick's first day of disability on August 26, 2002 and over the next year,

2   Plaintiff was seen and examined by Dr. Rodney Henderson, her primary treating

3   physician, every month.  Dr. Henderson indicated on October 7, 2002 that Patrick would

4   be "started on therapy" (AR 218), and on November 13, 2002, noted that she "needs

5   more therapy for her shoulder and elbow" and a repeat nerve study for her carpal tunnel.

6   AR 217. Each of the reports discussed Plaintiff's shoulder pain.[3]  On December 11,

7   2002, Dr. Henderson noted that although Patrick's "elbow is quite a bit better," she was

8   "now having intermittent pain in the shoulder." AR 216.  On January 8, 2003, Dr.

9   Henderson concluded that Patrick was "***currently temporarily disabled*** secondary to

10  her calcific tendinitis, epicondylitis, and right carpal tunnel syndrome and will be so for

11  probably the next three months." AR 189-191.[4]  Dr. Henderson performed right carpal

12  tunnel release surgery on Plaintiff on February 12, 2003.  AR 180-181.  On February 26,

13  2003,  Dr. Henderson found she was "[t]emporar[ily] totally ***disabled*** until further notice."

14  AR 176-77.

15          On May 4, 2003, Patrick filed her claim for long-term disability benefits ("LTD

16  benefits") with VPA.[5]  AR 286-94.  Patrick listed her right shoulder, elbow and hand as

17

18          [2] While Defendants cite Dr. Collins' 8/8/02 report for its finding that Plaintiff had "normal
    strength and sensation" in her right hand and "full range of motion at the elbow," (8/11/03
19  Denial Letter, AR 262; Def. MSJ at 5; Def. reply at 9) the report also indicates that: "Lynn has
    been having increasing discomfort in her right forearm and elbow. . . [and] is intermittently
20  having numbness in her three fingers as well." AR 376.  Furthermore, Dr. Collins' 3/26/02
    report notes that Patrick "had problems years ago with right rotator cuff tenderness [tendinitis].
21  . . [and] her symptoms have flared again.  She is having pain in her right shoulder and it is
    keeping her awake at night."  AR 378.
22
            [3] "She is having constant pain in the shoulder;" "she is complaining of constant
23  numbness of the three fingers," and "[s]he is tender over the rotator cuff insertion posteriorly
    and the elbow is tender." (11/13/02 rpt; AR 217). "She is still complaining of pain over the
24  anterolateral shoulder;" after injection, "patient really had no improvement in her pain and her
    cuff strength remained diminished."  (9/16/02 rpt, AR 219).  "The elbow is exquisitely tender."
25  (8/26/02 report; AR 220).

26          [4]Emphasis here, as elsewhere, has been added unless otherwise indicated.

27          [5] The Court previously granted VPA's motion for summary judgment on October 31,
    2007, finding that it was not a proper defendant in this action.  [Doc. 49]  The Plan designates
28  the Hewlett-Packard Company Employee Benefits Organization as the Plan Administrator, and
    ERISA specifies that any action to recover benefits shall be brought against the Plan and/or

1   the basis for her claim for LTD benefits, specifically: (1) right shoulder disorder of the

2   "bursa tendon," (2) right forearm lateral epicondylitis (i.e. tennis elbow),  and (3) right

3   hand carpal tunnel syndrome.  AR 286. Patrick indicated that she had seen Dr. Joan

4   Collins and Dr. Rodney Henderson for treatment.  *Id.*[6]

5          On May 14 and May 21, 2003, Dr. Henderson found that Patrick still had pain in

6   her elbow and shoulder and swelling and stiffness in her fingers, and that she could not

7   return to her previous job, but that she would be eligible for vocational rehabilitation,

8   working up to 4 hours per day, as long as she did no keyboard or mouse work, no

9   overhead work and no forceful or repetitive gripping.  AR 278-280, 150-51.  On June 25,

10  2003, Dr. Henderson concluded that Patrick had "reached a point of maximal medical

11  improvement and she will be considered permanent[ly disabled] and stationary."  AR

12  145-47.

13         **1.    VPA denies Plaintiff's claim**

14         On August 11, 2003, VPA denied Plaintiff's initial claim for LTD benefits. AR 261-

15  64.   The letter outlined Plaintiff's medical history on one page (AR 262) and concluded

16  that Plaintiff could perform other jobs for which she might have been qualified.  AR 263.

17  The letter indicated that Plaintiff's file had been referred to a vocational specialist for

18  review, who determined that she could perform the following jobs: (1) Credit Analyst, (2)

19  Management Analyst, (3) Sales Agent and (4) Order Department Supervisor.  *Id.*  The

20  _____

21  the Plan Administrator, not the Claims Administrator.  *Ford v. MCI Comms. Health & Welfare Plan*, 399 F.3d 1076, 1081-83 (9th Cir. 2005).  Effective December 16, 2001, the Plan name

22  was changed from "Hewlett-Packard Company Employee Benefits Organization Income Protection Plan" to the "Hewlett-Packard Company Disability Plan."  Declaration of Lauren A.

23  Deeb in support of Def. MSJ [Doc. 91], Ex. A at H585 [Doc. 91-3].

24         [6] Plaintiff also contends in her MSJ that her right vocal chord was paralyzed during a cervical disc fusion surgery in April 2001, that she required neck surgery in October 19, 2001

25  to repair it, and that her speaking capacity has been limited to a maximum of three hours per day since that time.  Pl. MSJ at 1-2.  However, there is no mention of this vocal chord injury in

26  Plaintiff's LTD claim form or appeal, or anywhere in the Administrative Record, other than one line in a medical record review performed by Dr. Christopher Behr which indicates that in

27  January 2001, Plaintiff was referred to Dr. Mahood Mahdavi for surgery to repair her right vocal chord.  Dr. Behr's 12/16/02 report, AR 192-203 at 195.  As there is no documentation in the

28  Administrative Record that Plaintiff's vocal chord injury existed after Plaintiff's LTD claim was filed, the Court has not considered the alleged vocal chord injury in its analysis.

06cv1506

letter acknowledged that Dr. Henderson diagnosed Plaintiff with carpal tunnel syndrome, lateral epicondylitis and calcific tendonitis, and recommended that any work should be restricted by "no forceful or repetitive gripping, no keyboarding or mouse work and no overhead work." AR 262. However, there was no analysis or indication of whether these four positions required computer, keyboarding or mouse work.

On August 27, 2003, Dr. Henderson continued to diagnose Patrick with disorders of right shoulder bursa/tendon, elbow pain and lateral epicondylitis, and stated that these restrictions continued to make Patrick disabled. AR 254-55. On November 19, 2003, Dr. Henderson noted that Patrick's symptoms were getting worse and were now in both Plaintiff's right and left hands. AR 253. On January 19, 2004, Dr. Henderson recommended that Patrick be taken out of her vocational rehabilitation training because it "is aggravating her symptoms." He found that she was "demonstrating symptoms of carpal tunnel reoccurrence on the right hand and a development on the left hand as well." He concluded that *"[s]he is now TTD [temporarily totally disabled*]." AR 142-43.

On February 3, 2004, Dr. Shack performed an EMG test which "reveal[ed] no electrical evidence of entrapment neuropathy," and "no evidence of carpal tunnel (post-op on the right) or cubital tunnel slowing on either side." AR 137-41. However, Dr. Shack specifically qualified his findings by stating that "this is a difficult diagnosis to make on EMG/NCV, and false negative tests are often seen." AR 138.

### 2.   Patrick appeals the denial of her claim

On February 5, 2004, Patrick (who was not represented by counsel at this time) timely sent a letter to VPA appealing the denial of her claim for LTD benefits. AR 251-255. She stated that since her LTD claim was denied on August 11, 2003, she continued to have pain and swelling in her right wrist, arm and shoulder, and that due to favoring her right arm, she was now experiencing pain and swelling in her left hand and arm. AR 251 She indicated that she was "*again on 'TTD' (Temporary Total Disability")*, as per Dr. Henderson's orders. *Id.* She stated that she had been in

1   vocational rehabilitation training as a Medical Assistant, but was "unable to complete my

2   externship because of my injuries.  At this time my injuries do not make me a suitable

3   candidate for employment."  *Id.*  In regard to the jobs listed in the denial letter, Patrick

4   stated that: "they all involve working on a computer and as Dr. Henderson stated . . .back

5   on May 14, 2003 ***I'm no longer a suitable candidate for any type of computer or***

6   ***repetitive motion employment***."  *Id.*  Patrick also indicated that while during the first

7   part of 2003, her right hand and arm improved because she was participating in physical

8   therapy three times a week, and was otherwise using them minimally, the pain and

9   problems returned with normal use during her vocational rehabilitation.  *Id.*  She enclosed

10  copies of additional reports from Dr. Henderson, including Primary Treating Physician

11  ("PTP") progress reports, a Physician's Supplemental Certificate and a Supplemental

12  Report.  *Id.*

13        On February 12, 2004, VPA wrote to Patrick, stating that it had received her

14  appeal and her supplemental reports from Dr. Henderson dated August 27, 2003,

15  November 19, 2003 and January 19, 2004.  AR 246.  It stated that Patrick had "not

16  submitted any evidence or documentation to substantiate [her] disability beyond August

17  24, 2003" (*Id.*), notwithstanding the fact that Dr. Henderson's January 19, 2004 report

18  concluded that Patrick was temporarily ***totally disabled***.  VPA indicated that it would

19  give Patrick another 30 days to submit additional documentation in support of her claim.

20  *Id.*  On March 3, 2004, VPA wrote Patrick informing her that it had requested medical

21  records from her worker's compensation carrier, and that the initial 45-day review period

22  would be suspended pending receipt of this information.  AR 245.

23        On April 7, 2004, VPA sent Patrick's file to Dr. Richard Kaplan, a physiatrist,[7] and

24  requested that he perform a Complete Medical Record Review. VPA 4/7/04  lttr to Dr.

25  _____

26        [7] A physiatrist is a physician who specializes in physical medicine and rehabilitation with
      a focus on restoring function to the patient.   American Adademy of Physical Medicine and
      Rehabilitation, What is a Physiatrist?, at http://www.aapmr.org/condtreat/what.htm.

27  Specifically, the types of disorders physiatrists are trained to diagnose and treat include:
      tendonitis, carpal tunnel syndrome, neck and back pain, chronic pain, and work-related

28  injuries.  *Id.* While Plaintiff argues that Dr. Kaplan was unqualified to render an opinion, she
      has submitted no evidence in support of her contention.

Kaplan, AR 130-131.  VPA specified that the purpose of the review was to provide it "with a second opinion regarding the claimant's medical condition, restrictions and limitations," but that it was "not asking whether the claimant can return to work.  We will make a vocational determination." AR 130.[8]  Dr. Kaplan prepared a 3-page report on April 9, 2004, concluding that in his opinion, "there is no objective evidence of any remaining restrictions at this time for this patient." AR 127-29.

Dr. Kaplan referred to Dr. Henderson's reports from 11/13/02, 2/26/03, 6/25/03 and 2/9/04, as well as the 2/3/04 EMG test. In regard to the more recent reports, he acknowledged that Dr. Henderson's 6/25/03 report documented "a permanent and stationary" disability, "minimal pilar pain and mild provocative test for epicondylitis," and that Patrick should be restricted from using a computer keyboard or mouse and should not perform forcible gripping, grasping or fine finger manipulation. AR 128. He also acknowledged Dr. Henderson's 2/9/04 report noting that Patrick had bilateral hand swelling, numbness and tingling and that vocational rehabilitation had been discontinued, and stated that the report found decreased sharp pain in her arms, no obvious edema as well as good flexion and extension of the digits, and negative tests for Tinel's and elbow flexion. *Id.* Dr. Kaplan concluded: "There is no documentation of any objective abnormalities on physical examinations which would result in limitations in reference to the patient's lateral tendonitis in her shoulder or calcific tendonitis.  The patient is noted to have full range of motion with essentially subjective symptoms of pain though no objective evidence of synovitis or inflammation in any of those areas."  *Id.*

In his last report prior to the denial of Plaintiff's appeal, dated June 7, 2004, Dr. Henderson noted that Patrick reported a ***"significant flare-up" of symptoms*** in her right upper extremity. AR 437-38.  "She is now having worsening symptoms of her elbow

_____

[8]  Plaintiff contends that Dr. Kaplan did not spend adequate time performing his review, and states that he "rendered his 'report' on the same day he was hired to do so."  Pltff Opp at 16.  Defendants dispute this, stating that the file was sent to Dr. Kaplan on April 7, and he provided his report 2 days later on April 9. Def. MSJ Reply at 6-7.  In any event, it appears from Dr. Kaplan's report that he did prepare his review in one day, as the opening sentence reads: "Today I had the opportunity at your request to perform a Complete Medical Record Review on [Lyn Patrick]." AR 127.

06cv1506

1   wrist and even the shoulder.  She is back in her elbow band and tunnel brace and using

2   ice with improvement."  *Id.*   He stated that Patrick was "exquisitely tender over the

3   lateral epicondylar area and ERCB with pain with resisted wrist extension;" the "carpal

4   tunnel is minimally tender with negative provocative tests for carpal tunnel," and that she

5   had "decreased grip strength."  *Id.*   He indicated that her work status remained

6   unchanged from his January 19, 2004 report -- ***temporarily totally disabled***. *Id.*

7            **3.       VPA denies Plaintiff's appeal**

8            On July 9, 2004, VPA denied Plaintiff's appeal. AR 444-48.  VPA described

9   certain medical reports, including several of Dr. Henderson's reports, Dr. Kaplan's report

10  and the EMG test.  AR 446.  The letter discussed Patrick's complaints of pain,

11  tenderness, swelling, numbness and tingling, but relied heavily on the EMG test which

12  "was essentially a normal examination."  No mention was made of Dr. Henderson's

13  findings of "temporary total disability." The VPA acknowledged Dr. Henderson's opinion

14  that Patrick should not use a computer keyboard or mouse, and should not perform

15  repetitive forceful gripping, grasping or other fine finger manipulation.  *Id.*

16           VPA cited the vocational consultant report and stated that considering Patrick's

17  education, training, expertise, and in light of her physical restrictions, she could perform

18  the following jobs: (1) Credit Analyst, (2) Management Analyst, (3) Sales Agent and (4)

19  Order Department Supervisor.  *Id.*  However, there was no analysis or indication of

20  whether these four positions required computer, keyboarding or mouse work. The letter

21  concluded that while Plaintiff "may be unable to return to [her] former position at Hewlett-

22  Packard, the medical and vocational information substantiates [she is] capable of

23  performing other qualifications for which [she is] or could become qualified."  *Id.* at 447.

24  Therefore, VPA reaffirmed its denial of Patrick's claim for LTD benefits.  *Id.*

25           **4.       Plaintiff submits additional evidence to VPA after the denial of her**
26                    **appeal**

27           On November 24, 2004, nearly five months after VPA denied Plaintiff's appeal for

28  LTD benefits, Patrick, through her counsel, sent VPA and HP a letter requesting that

1  VPA reopen Plaintiff's claim file so that Plaintiff could file a "supplemental appeal."  Ex. E

2  to Def. MSJ [Doc. 91-8] at 455.  VPA did not respond to Plaintiff's counsel's request or

3  agree to reopen Plaintiff's file.  Compl. ¶ 52.

4       Nonetheless, on February 9, 2006 -- over 1-1/2 years after Plaintiff's appeal was

5  denied on July 9, 2004 -- Plaintiff's counsel sent a second letter to VPA and HP,

6  purporting to "perfect" her appeal that VPA had denied back in July 2004.  Ex. F to Def.

7  MSJ [Doc. 91-9].  Plaintiff demanded that HP and/or VPA grant Plaintiff "full LTD

8  benefits," and submitted several medical records regarding examinations conducted of

9  Plaintiff "[s]ince the time of HP's denial of her LTD benefits."  *Id.* at 473, 499 and Exs. G-

10 O.  Each of the medical records submitted by Plaintiff's counsel with his February 6,

11 2006 letter was dated between January and December 2005.[9]  As the medical records

12 were not in existence at the time VPA denied Plaintiff's appeal in July 2004, Defendants

13 had no obligation to consider the reports, and the Court may not consider these reports,

14 as addressed in Section IV below.

15     **B. Pertinent Plan Terms**

16          **1.    "Total disability" under the terms of the plan**

17      To be eligible for benefits under the Plan, the claimant must establish that she is

18 "Totally Disabled" as defined by the Plan.  A member applying for short-term disability

19 benefits must show that "following the onset of the injury or sickness, the Member is

20 continuously unable to perform each and every duty of his or her "Usual Occupation."

21 *See* Plan, Ex. A to Def. MSJ, § 2(o)(I) at 10.  A member's "Usual Occupation" is defined

22 as the normal work assigned to the member by HP.  *Id.*, § 2(t) at 13.   If a member

23 qualifies, she is entitled to receive up to a maximum of 52 weeks of short-term disability

24 benefits.  *Id.*, § 2(o)(I) at 10.

25      A member who applies for long-term disability benefits must show that "the

26 ─────────────

27      [9] Exhibits G-O to the February 9, 2006 letter sent by Plaintiff's counsel consisted of medical reports all prepared after VPA's July 9, 2004 denial of benefits -- Dr. Henderson's 4/22/05 report (Ex. G); Dr. Mahdavi's 1/31/05 report (Ex. H); Dr. Ron King's 5/9/05 report (Ex.
28 I); Dr. John Dorsey's CV and 10/20/05 report (Exs. J, K); Dr. Nudleman's CV and 9/26/05 report (Exs. L, M), and Dr. Goldfarb's CV and 12/12/05 report (Exs. N-O).

Member is continuously unable to perform any occupation for which he or she is or may become qualified by reason of his or her education, training or experience." *Id.*, § 2(o)(ii) at 10.  The Plan provides that "the determination of Total Disability shall be made by the Claims Administrator on the basis of objective medical evidence.  'Objective medical evidence' shall mean that evidence establishing facts or conditions as perceived without distortion by personal feelings, prejudices or interpretations."  *Id.*, § 2(o) at 11.

### 2.      The Plan's delegation of authority to VPA

The Plan provides that:

> The Company is the named fiduciary which has the discretionary authority to act with respect to any appeal from a denial of benefits.  The Company's discretionary authority includes the authority to determine eligibility for benefits and to construe the terms of the Plan.  The Claims Administrator shall administer the review of denied claims on the Company's behalf and make the decision on review.

Ex. A, § 8(a) at 51.

The Plan vests discretionary authority in VPA, as Claims Administrator, to determine "Total Disability" and to "process[] claims."  *Id.* at § 2(o) and § 4(f) at 11 and 18.  The Plan also states that the "Claims Administrator shall have the discretionary power to construe the language of the Plan and make the decision on review on behalf of the Company."  *Id.*, § 8(e).

### III.    LEGAL STANDARDS

### A.      Summary Judgment Standard In ERISA Cases

Normally, summary judgment is appropriate if the evidence presented "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).  However, in the Ninth Circuit, "where the abuse of discretion standard applies in an ERISA benefits denial case, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply."  *Nolan v. Heald College*, 551 F.3d 1148, 1154 (9th Cir. 2009)

(noting that traditional rules of summary judgment may apply if, unlike here, there is a structural conflict of interest).  Thus, the issue before the Court is whether VPA abused its discretion in denying Plaintiff's claim for long-term disability benefits on behalf of Defendants.

**B.   "Abuse of Discretion" Standard of Review Applies**

This Court previously ruled on September 7, 2007 that "the proper standard of review of VPA's denial of LTD benefits in this action is abuse of discretion."  [Doc. 48 at 15].  The Court confirmed for a second time, on December 1, 2008, that "VPA's decision to deny Plaintiff's LTD benefits claim will be reviewed under the 'arbitrary and capricious' (or, synonymously, 'abuse of discretion') standard."  [Doc. 76 at 14]. Despite these unambiguous rulings, Plaintiff yet again argues at length that the *de novo* standard of review should apply because: (1) the Plan does not vest sufficient discretion in VPA to trigger the "arbitrary and capricious" standard of review and/or HP improperly delegated its fiduciary responsibility to VPA, and (2) procedural irregularities and/or structural conflicts of interest require *de novo* review or must be considered as factors in abuse of discretion review. Pl. MSJ at 9-13, Pl. Opp to Def. MSJ at 21-25.  For the reasons set forth below, and in the Court's previous Orders [Docs. 48, 76], the Court confirms that the "abuse of discretion" standard of review applies.

**1.   The Plan vests authority to administer claims with VPA**

Plaintiff extensively challenges the Plan's delegation of claims administration authority to VPA, arguing (again) that the Court should give "no deference" to VPA in reviewing its denial and conduct a *de novo* review.  Pl. MSJ at 9-13, Pl. Opp to Def. MSJ at 21-25.  In granting Defendants' Motion for Summary Adjudication re the Proper Standard for Review, this Court previously held that the Plan confers sufficient discretion in VPA such that the "abuse of discretion" standard of review applies:

> The language of the Plan and ASA sufficiently confers discretionary authority to VPA as a matter of contractual agreement to shift the standard of review to abuse of discretion.  Under the Plan and ASA, VPA is authorized to process claims, determine eligibility for and the amount of any benefits, and render decisions on appeals of denied claims.

1
2

> Furthermore, VPA is unambiguously granted the discretion to
> construe Plan language and make decisions on review on
> behalf of HP.

3   *See* Doc. No. 48 at 7-8(9/7/07 Order granting MSJ) (internal citations omitted)

4       When Plaintiff attempted to reargue the issue in moving to compel additional

5   discovery from Defendants, the Court rejected Plaintiff's argument a second time:

6
7

> This Court's ruling on the standard of review constitutes the
> law of the case, and it is wholly inappropriate for Plaintiff to
> re-argue this matter at this stage of the proceedings.

8   [Doc. No. 76 at 15].

9       In line with its previous rulings, the Court rejects Plaintiff's contention that "zero

10  deference applies to VPA." Pl. MSJ at 12.  Likewise, the Court rejects Plaintiff's

11  contention that HP improperly delegated its "fiduciary responsibility" to VPA.  As

12  Plaintiff's own cited authorities recognize, it is settled that "[u]nder ERISA, a named

13  fiduciary may delegate its fiduciary responsibilities" to other named fiduciaries, or even to

14  non-fiduciaries.  *Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914

15  F.2d 1279, 1283 (9th Cir. 1990), citing 29 U.S.C. § 1105 (c)(1)**.**  Accordingly, when an

16  ERISA plan "expressly gives the administrator or fiduciary discretionary authority to

17  determine eligibility for benefits . . . [and the] named fiduciary properly designates

18  another fiduciary, delegating its discretionary authority, the 'arbitrary and capricious'

19  standard of review applies. . ."  *Id.* at 1283-84.  Here, the Plan directly vests VPA with

20  discretion to make benefits determinations and interpret Plan terms.  Thus, Plaintiff's

21  "'failure to properly delegate' argument is irrelevant. . . given the Plan's direct assignment

22  of duties to [VPA]."  *Riffey v. Hewlett-Packard Co. Disability Plan*, 2007 U.S. Dist. LEXIS

23  21847, *27 (E.D. Cal. Mar. 27, 2007) (arbitrary and capricious standard applied to HP's

24  Plan, as administered by VPA); *see also Lamantia v. Voluntary Plan Adm'rs, Inc.*, 401

25  F.3d 1114, 1123 (9th Cir. 2005) (same).

26      **2. There is no structural conflict of interest**

27      Plaintiff cites numerous cases for the proposition that a "structural conflict must be

28  weighed as a factor in evaluating whether the plan abused its discretion."  *See, e.g.,* Pl.

1   MSJ at 13-14.  However, the Court previously ruled that "[b]ecause the Plan at issue

2   herein was entirely funded by Defendant HP . . . while VPA had discretionary authority to

3   determine eligibility for and the amount of benefits . . . no structural conflict of interest

4   exists in this case."  [Doc. 76 at 9].

5        **C.     Abuse Of Discretion Analysis**

6        An "abuse of discretion analysis allows a court to tailor its review to all the

7   circumstances before it."  *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 968 (9th

8   Cir. 2006).  In *Abatie*, 458 F.3d at 970, the Ninth Circuit addressed the question of what

9   evidence the court may consider when reviewing a denial of LTD benefits, and

10  concluded that "in general, a district court may review only the administrative record

11  when considering whether the plan administrator abused its discretion, but may admit

12  additional evidence on *de novo* review."   The Ninth Circuit has confirmed that  "ERISA

13  plan administrators do not have unbounded discretion."  *Booton v. Lockheed*, 110 F.3d

14  1461, 1463 (9th Cir. 1997).

15       The Supreme Court has recently reaffirmed the principle that ERISA "sets forth a

16  special standard of care upon a plan administrator" to exercise its discretion "solely in the

17  interests of the participants and beneficiaries of the plan," providing a "full and fair

18  review" to claimants.  *Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2350 (2008).

19  As another court in this Circuit recently held, under the "abuse of discretion" standard,

20  "[t]he court ***cannot simply 'rubber stamp'*** Defendant's decision if it failed to provide a

21  full and fair review of the facts of this case."  *Beckstrand v. Elec. Arts Group Long Term*

22  *Disability Ins. Plan*, 2008 U.S. Dist. LEXIS 83195, *27  (E.D. Cal., Sept. 16, 2008).  *See*

23  *also Ordway v. Metropolitan Life Ins. Co.*, 2007 U.S. Dist. LEXIS 61341 (S.D. Cal. 2007)

24  (denying defendant's motion for summary judgment when "the evidence, when taken as

25  a whole, [wa]s not substantial" even though defendant's finding of non-disability was

26  "supported by some evidence.")

27       In *Glenn*, 128 S.Ct. 2343, the Supreme Court held that "when judges review the

28  lawfulness of benefit denials, they will often take account of several different

considerations of which a conflict of interest [where applicable] is one." *Id.* at 2351.  The

Court explained:

> This kind of review is no stranger to the judicial system.  Not only trust law, but also administrative law, can ask judges to determine lawfulness by ***taking account of several different, often case-specific, factors***, reaching a result by weighing all together.  In such instances, any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessarily depending upon the tiebreaking factor's inherent or case-specific importance.

*Id. See also Toven v. Metro. Life Ins. Co.*, 2008 U.S. Dist. LEXIS 100445, *24-25 (C.D.

Cal., Dec. 2, 2008) ("In theory, any number of factors might be relevant to such a

determination" of whether the administrator abused its discretion in denying LTD

benefits).[10]

The Supreme Court in *Glenn* affirmed the Sixth Circuit's grant of LTD benefits

based on consideration of a combination of factors, including: (1) that "MetLife had

emphasized a certain medical report that favored a denial of benefits, and had

deemphasized certain other reports that suggested a contrary conclusion," (2) that

MetLife failed to take into account evidence indicating that stress aggravated Plaintiff's

condition, and (3) MetLife's conflict of interest, which was "but one factor among many

that a reviewing judge must take into account."  *Id.* at 2347-52.  The Supreme Court

concluded that "[a]ll these serious concerns, taken together with some degree of

conflicting interests on MetLife's part, led the court to set aside MetLife's discretionary

decision.  We can find nothing improper in the way in which the court conducted its

review."  *Id.* at 2352.

Likewise, in *Taft v. Equitable Life Assurance Society*, 9 F.3d 1469, 1473 (9th Cir.

1993), the district court held that the defendant abused its discretion in terminating

---

[10] Although there is no structural conflict in this case, a structural conflict is not a prerequisite to finding an abuse of discretion.  When there is no conflict of interest, the Court applies a "straightforward abuse of discretion analysis."  *Abatie* 458 F.3d at 968.  Courts may take into account a number of "different, often case-specific factors" (*Glenn*, 128 S.Ct. at 2351), and "conflict of interest is ***but one factor***."  *Beckstrand*, 2008 U.S. Dist. LEXIS 83195 at *20 (emphasis in original).  Accordingly, the Court will conduct its review of VPA's denial of LTD benefits taking into account all relevant factors exclusive of any purported conflict of interest.

plaintiff's LTD benefits, and plaintiff appealed.  Defendant argued to the Ninth Circuit that because it gave an explanation for terminating benefits, the court's "analysis should go no further."  *Id.*  The Ninth Circuit disagreed, finding that "***abuse of discretion review is not that limited***."  *Id.*  The court held that "an administrator also abuses its discretion if it relies on clearly erroneous findings of fact in making benefit determinations."  *Id.*  The court went on to analyze the substance of the reports to ascertain whether they were clearly erroneous, concluding that they were not.  *Id. See also Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 944 (9th Cir. 1999) (holding that an "administrator also abuses its discretion if it relies on clearly erroneous findings of fact in making benefit determinations").

In determining the amount of deference to which the insurer is entitled, the factors the district court may consider include: (1) whether the defendant ignored plaintiff's complaints of pain, which are inherently subjective and not easily determined by objective measurement; (2) whether defendant had a "meaningful dialogue with its beneficiary in deciding whether to grant or deny benefits," and (3) whether defendant "took various of [plaintiff's] doctors' statements out of context, or otherwise distorted them," or "omit[ted an] important qualifier."  *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 872-73 (9th Cir. 2008).  If so, such factors suggest that "less deference should be given to the decision of the claims administrator."  *Id.* at 873

## IV.   MEDICAL RECORDS SUBMITTED BY PLAINTIFF AFTER VPA DENIED HER APPEAL

As indicated above, VPA denied Plaintiff's appeal on July 9, 2004.  AR 444-48.  Five months later, on November 24, 2004, Patrick's counsel sent VPA and HP a letter requesting that VPA reopen Plaintiff's claim file so that Plaintiff could file a "supplemental appeal."  Ex. E to Def. MSJ [Doc. 91-8] at 455.  VPA did not respond.  Compl. ¶ 52.  On February 9, 2006 -- over 1-1/2 years after Plaintiff's appeal was denied on July 9, 2004 -- Plaintiff's counsel sent a second letter to VPA and HP demanding HP

grant her claim for LTD benefits, attaching several medical records, all from 2005 -- at least 6 months after VPA's denial of her appeal.  Ex. F to Def. MSJ [Doc. 91-9].

**A.    VPA Did Not Abuse Its Discretion By Failing To Consider Evidence Submitted After Plaintiff's Appeal Was Denied**

Plaintiff argues at length that VPA abused its discretion in failing to consider the medical records and letters submitted after her appeal was denied.  *See, e.g.* Pl. MSJ at 16-18; Pl. reply at 7-10.  However, it is settled law that a claims administrator cannot abuse its discretion "by *failing to consider evidence not before it"* at the time of its determination.  *Taft*, 9 F.3d at 1472; *Alford v. DCH Foundation Group Long-Term Disability Plan*, 311 F.3d 955, 959-60 (9th Cir. 2002) (administrator did not abuse its discretion in failing to consider medical evidence that Plaintiff submitted several weeks after the deadline set forth in the denial letter, and such documents were not part of the administrative record); *see also Bendixen*, 185 F.3d at 944 ("it was not error to refuse to consider Dr. High's report because the report was given to Standard after its second review had been completed and a final determination had been made").

Furthermore, the Plan does not obligate VPA to consider evidence submitted after an appeal is denied.  The Plan sets forth the procedures VPA must follow in reviewing appeals of denied claims, Plan, Ex. A, § 8(a)-(f) at 51-54.  Under that procedure, the claimant has the right to a single appeal of an adverse decision by VPA.  *Id.*, § 8(b).  VPA must then give the claimant written notice of its decision within 45 days of receiving the appeal, unless special circumstances warrant additional time for review, in which case it must render a decision within 90 days.  *Id.*, § 8(c).  If VPA denies the appeal, the claimant has exhausted her administrative remedies under the Plan and may then file a lawsuit "to recover benefits under the Plan."  *Id.*, § 8(g) at 54-55.

Plaintiff filed an evidentiary objection on March 2, 2009 [Doc. 98], essentially arguing that the administrative record submitted by Defendants was incomplete because it did not include documents (such as Plaintiff's counsel's two letters with exhibits) that were submitted to VPA after it had already denied Plaintiff's claim and appeal.  For the

16

1   reasons set forth herein, Plaintiff's evidentiary objection is **OVERRULED**.  Defendants

2   filed an evidentiary objection on March 3, 2009 [Doc. 102] objecting to the declarations

3   (including exhibits) of Lyn Patrick, Howard Hellen, Dr. John Dorsey, Dr. Rodney

4   Henderson, Dr. Byron King, Dr. M. Mahdavi, Dr. Kenneth Nudleman and Dr. Howard

5   Goldfarb.  Defendants' primary objection is that such declarations and exhibits are

6   irrelevant in that Plaintiff seeks to admit evidence that was not contained in the

7   administrative record for Plaintiff's LTD claim that existed at the time VPA denied

8   Plaintiff's appeal on July 9, 2004.[11]  For the reasons set forth herein, Defendants'

9   evidentiary objections are **SUSTAINED**.

10

11          **B.    This Court May Not Consider Reports Outside The Administrative
                    Record As Plaintiff Has Not Demonstrated Procedural Irregularities**

12          The Ninth Circuit recently confirmed that "[i]t is the general rule, of course, that

13   when applying an abuse of discretion standard to an ERISA plan, the district court's

14   review is limited to the administrative record."  *Burke v. Pitney Bowes Inc. Long-Term*

15   *Disability Plan*, 544 F.3d 1016, 1027 (9th Cir. 2008), citing *Abatie*, 458 F.3d at 970.

16   However, "the district court may consider evidence outside the administrative record if it

17   determines that procedural irregularities prevented the full development of the

18   administrative record."  *Burke*, 544 F.3d at 1028, citing *Abatie*, 458 F.3d at 973; *see also*

19   *Saffon*, 522 F.3d at 872, n. 2 ("*Abatie* held that district courts may take additional

20   evidence whenever procedural irregularities have prevented full development of the

21   administrative record, and to the extent that our earlier cases conflict with *Abatie . . .*

22   those cases are no longer good law.")

23          Here, the Court finds that Plaintiff has failed to demonstrate that procedural

24   irregularities prevented the full development of the administrative record.  Indeed, the

25   reports could not have been excluded due to a procedural error, because they did not

26   _____

27          [11] Defendants also object to the Patrick Declaration on additional grounds such as
     conclusion, opinion, assumes facts not in evidence, lack of foundation, argument, vague and
28   ambiguous, immaterial and hearsay.  As the Court has relied on the Administrative Record for
     the pertinent facts, rather than the Patrick Declaration, it is not necessary to reach these
     additional grounds for objection.

1   even exist at the time VPA denied Plaintiff's claim.  The Ninth Circuit recently rejected

2   the same argument made by Plaintiff here that the district court should consider medical

3   reports that did not exist at the time benefits were denied:

> [Plaintiff] argues that the district court erred in failing to
> consider doctors' reports outside the administrative record.
> The reports were written after. . . VPA issued its decision
> denying [plaintiff's] claim.  These reports do not fall into any of
> the narrow exceptions pursuant to which the reports could be
> considered.  The ***reports were not excluded due to any
> procedural error***, *Abatie*, 458 F.3d at 973, ***because they
> did not exist at the time of the administrative
> determination***.  Nor do the reports provide any evidence of
> conflict necessary to determine how much weight to give a
> conflict of interest under the abuse of discretion standard.  *Id.*
> at 970.  We do not engage in a *de novo* review that would
> permit admission of the reports.

12  *Lamantia v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 2008 U.S.

13  App. LEXIS 12172, *5 (9th Cir. June 2, 2008); *see also Alford,* 311 F.3d at 959

14  ("Permitting a district court to examine evidence outside the administrative record would

15  open the door to the anomalous conclusion that  a plan administrator abused its

16  discretion by failing to consider evidence not before it.")

17       Similarly, in *Toven*, 2008 U.S. Dist. LEXIS 100445 at *32, the plaintiff attempted to

18  submit additional medical evidence that was not provided to defendant MetLife during

19  the original processing of the claim.  In holding that it was "not the type of evidence this

20  Court can consider," the court reasoned that it could not have been excluded from the

21  claim file due to procedural irregularities because it did not exist at the time of denial:

> Here, however, the evidence submitted by Plaintiff postdates
> MetLife's final decision.  If evidence had existed at the time of
> MetLife's denial that should have been in the claim file, but
> was not there because of MetLife's misconduct, it could have
> been presented to the Court now.  But ***there is no way the
> evidence at issue could have been in the claim file at any
> time, since it did not yet exist***.  Accordingly, this Court has
> not considered Plaintiff's additional proffered evidence.

     Therefore, because the additional medical reports and materials submitted by

28  Plaintiff did not exist at the time of VPA's denial of her appeal, these documents could

1   not have been excluded from the claim file due to procedural irregularities.  Accordingly,

2   this Court has not considered them, and VPA did not abuse its discretion in failing to

3   consider them.

4   **V.    VPA ABUSED ITS DISCRETION IN DENYING PLAINTIFF'S CLAIM FOR**

5   **        LONG-TERM DISABILITY BENEFITS**

6          For the reasons set forth below, the Court finds that the following factors, when

7   considered in their totality, demonstrate that VPA abused its discretion in denying

8   Plaintiff's claim for LTD benefits.

9          **A.    VPA Failed To Consider Whether Returning To Work Would Cause**

10  **                Plaintiff's Condition to Worsen**

        In *Toven*, 2008 U.S. Dist. LEXIS 100445 at *43, defendant MetLife denied

11  plaintiff's claim for LTD benefits, and the court, reviewing the denial under an abuse of

12  discretion standard, held that Plaintiff was entitled to recover LTD benefits.[12]  One of the

13  primary factors the court considered in regard to whether defendant MetLife properly

14  investigated or evaluated Plaintiff's claim was that it completely "fail[ed] to ask the

15  question of whether Plaintiff, whose condition had improved after leaving work, would be

16  able to return to work without a concomitant worsening of his condition."  *Id.* at *37-38.

17  "In other words . . . the question of whether he could go back to work without danger was

18  never posed, let alone answered."  *Id.*

19          Likewise, the medical records here show that when Plaintiff was not working and

20  was undergoing physical therapy, her symptoms improved.  However, when she began

21  working again, through her vocational rehabilitation and externship, her symptoms (pain,

22  swelling, numbness and tingling in all fingers, and paresthesis in the median nerve

23  distribution) returned.  AR 142-43. As a result, Dr. Henderson recommended that she "be

24  taken out of her vocational rehabilitation training," because it was "aggravating her

25  symptoms," including "carpal tunnel reoccurrence on the right hand and a development

26  on the left hand as well," and concluded that "[s]he is now TTD [temporarily totally

27

28  _____

        [12] Although there was a conflict of interest in that case, the court found that it "was not
    'egregious,' and [did] not weigh particularly heavily either for or against [MetLife]."  *Id.* at *30.

1  disabled]." *Id.*  In light of this, VPA's failure to consider whether Plaintiff's condition would

2  worsen upon returning to work is a factor that weighs in favor of a finding that it failed to

3  adequately investigate or evaluate her claim.

4      **B.    VPA Failed to Have a "Meaningful Dialogue" with Plaintiff**

5      The Ninth Circuit held over ten years ago in *Booton*, 110 F.3d at 1463, that ERISA

6  regulations call for a "'meaningful dialogue' between claims administrator and

7  beneficiary." *Saffon*, 522 F.3d at 870, citing *Booton*, 110 F.3d at 1463.  The Ninth Circuit

8  explained:

9

10         In simple English, what this regulation calls for is a
           meaningful dialogue between ERISA plan administrators and
           their beneficiaries.  If benefits are denied in whole or in part,
11         the reason for the denial must be stated in reasonably clear
           language. . . ; if the plan administrators believe that  more
12         information is needed to make a reasoned decision, they
           must ask for it.  There is nothing extraordinary about this; it's
13         how civilized people communicate with each other regarding
           important matters.

14

15  *Booton*, 110 F.3d at 1463.

16      The Supreme Court recently confirmed in *Glenn* that there is a fiduciary-like

17  relationship between administrator and beneficiary to act in the best interests of the plan

18  beneficiaries:

19         ERISA imposes higher-than-marketplace quality standards on
           insurers.  It sets forth a special standard of care upon a plan
20         administrator, namely, that the administrator discharge its
           duties in respect to discretionary claims processing ***solely in***
21         ***the interests of the participants and beneficiaries of the***
           ***plan***, § 1104(a)(1); it simultaneously underscores the
22         particular importance of accurate claims processing by
           insisting that administrators provide a full and fair review of
23         claim denials.

24  *Glenn*, 128 S. Ct. at 2350.

25      In analyzing whether a "meaningful dialogue" had taken place, the court in *Saffon*

26  noted that, as here, the administrator had referred plaintiff's appeal to a doctor who

27  neither examined nor interviewed her.  522 F.3d at 869.   Also as here, the reviewing

28  doctor concluded that plaintiff had failed to provide sufficient "objective medical

   evidence" of her alleged disability.  *Id.* at 869-70.  Similarly, the denial letter informed

1   plaintiff that she could appeal by providing evidence of her disability, but "does not

2   explain why the information [plaintiff] has already provided is insufficient for that

3   purpose." *Id.* at 870.  Moreover, as here,  the court found that defendant "did not meet its

4   duty . . . to have a meaningful dialogue with its beneficiary . . . [by taking] various of her

5   doctors' statements out of context or otherwise distort[ing] them in an apparent effort to

6   support a denial of benefits." *Id.* at 873.  The court in *Saffon* also found that defendant

7   "failed to have a meaningful dialogue" with plaintiff by failing to consider her complaints

8   of pain, or the fact that "individual reactions to pain are subjective and not easily

9   determined by reference to objective measurements." *Id.* at 872.

10         The facts here likewise demonstrate that VPA failed to have a meaningful

11   dialogue with Patrick.  Rather than having a full and open communication with her

12   regarding the problems she was having with her carpal tunnel syndrome, elbow and/or

13   shoulder, including the pain she was experiencing that might be difficult to substantiate

14   with objective evidence, VPA merely told Plaintiff to submit evidence to substantiate her

15   disability.  2/12/04 VPA letter, AR 246.  VPA claimed Plaintiff had "not submitted any

16   evidence or documentation to substantiate [her] disability beyond August 24, 2003" (AR

17   246), notwithstanding the fact that Plaintiff submitted a January 19, 2004 report from Dr.

18   Henderson (which VPA acknowledged it received) in which he stated that she had

19   worsening symptoms, should quit vocational training and was temporarily totally

20   disabled.  *See* Dr. Henderson's 1/19/04 report, AR 142-43. Likewise, VPA's final denial

21   letter claimed that there was no objective evidence of Plaintiff's limitations or disability

22   without explaining why the information Plaintiff had previously provided was insufficient

23   and without specifying the additional evidence required.  AR 444-48.  VPA's failure to tell

24   Plaintiff what "objective evidence" was required was insufficient.  *See Volynskaya v.*

25   *Epicentric, Inc. Health & Welfare Plan*, 2007 U.S. Dist. LEXIS 81208, *18 (N.D. Cal., Oct.

26   16, 2007) ("It is insufficient to simply inform a claimant that there is no 'objective'

27   evidence to support a disability claim without specifying what type of 'objective' evidence

28   would substantiate a claim.")

06cv1506

1    In addition to not telling Patrick what type of evidence she could submit to

2   substantiate her claim, VPA did not examine or interview her, or let her know specifically

3   why the reports from Dr. Henderson in which he found that she was disabled were not

4   sufficient to establish her disability.  VPA also did not investigate Plaintiff's claims in her

5   appeal that she was unable to work at other jobs because she had developed carpal

6   tunnel in both hands and had a flare-up of symptoms in her elbow and shoulder, and that

7   her symptoms were aggravated by attempting to return to work (in an externship).

8   Therefore, this factor weighs in favor of a finding that VPA did not conduct a "full and fair"

9   investigation of Patrick's disability claim or have a meaningful dialogue with her.

10    **C.    VPA Abused Its Discretion In Relying On a Vocational Consultant
          Report Which Contained Clearly Erroneous Findings Of Fact And Was
11        Not Revised To Reflect Plaintiff's Worsening Condition**

12    An ERISA administrator abuses its discretion if it relies on clearly erroneous

13   findings of fact.  *Boyd v. Bell*, 410 F.3d 1173, 1178 (9th Cir. 2005); *Taft*, 9 F.3d at 1473.

14   The Supreme Court has found that a "finding is clearly erroneous when although there is

15   evidence to support it, the reviewing body on the entire evidence is left with the definite

16   and firm conviction that a mistake has been committed."  *Concrete Pipe and Prods. v.*

17   *Construction Laborers Pension Trust*, 508 U.S. 602, 622 (1993).

18    Here, the administrator relied heavily on the report of a vocational consultant in

19   determining that Plaintiff could perform other jobs.  *See* 8/11/03 denial lttr (AR 261-64)

20   and 7/9/04 denial lttr (AR 444-48).  However, the vocational report was clearly

21   erroneous, because it concluded that Patrick could perform four other jobs, when in fact,

22   Plaintiff could not perform typing, or keyboard or mouse work, which each of these jobs

23   required.  Plaintiff's treating doctor, Dr. Henderson, consistently concluded that Plaintiff

24   could not and should not perform any typing, writing keyboard or mouse work.[13]   VPA

25
_____
26        [13] *See* (1) Dr. Henderson's 3/19/03 report -- if plaintiff returns to work, she should not
       use her right upper extremity at all. (AR 167-68); (2) Dr. Henderson's 5/14/03 report -- plaintiff
27       should perform no forceful or repetitive gripping, no keyboard or mouse work, and no overhead
       work. (AR 278-280); (3) Dr. Henderson's 5/21/03 report – Plaintiff should perform "no [mouse]
28       or keyboard work, and no repetitive forceful gripping, grasping or fine manipulation of the right
       hand." (AR 151); (4) Dr. Henderson's 6/25/03 report -- Patrick "should be precluded from the
       use of computer keyboard and mouse work. She also should not perform repetitive forceful

1   cited this recommendation in its initial denial letter and did not dispute it (AR 262), but

2   relied upon the vocational consultant report to conclude that there were other jobs that

3   Plaintiff could perform.  AR 261-64.

4        The Vocational Rehabilitation Consultant, Renee Lange, did not interview Patrick

5   or request a physical examination of her.  Instead, according to Lange's three-page

6   report, she spent approximately 4 hours reviewing Patrick's qualifications, and running a

7   search on the OASYS software program which identified occupations that could be

8   consistent with Patrick's qualifications and abilities. *See* 6/25/03 report, AR 269-72.  The

9   occupations Ms. Lange concluded Patrick could perform were: (1) Credit Analyst, (2)

10  Management Analyst, (3) Sales Agent and (4) Order Department Supervisor.  *Id.* at 270.

11       The vocational report cites and acknowledges the restrictions set forth in Dr.

12  Henderson's 5/14/03 report -- that Patrick must "avoid forceful or repetitive gripping and

13  grasping [and]. . .  avoid overhead work and keyboard or mouse work with the right

14  upper extremity."  *Id.* at 270. However, Ms. Lange performed no analysis regarding

15  whether these four potential occupations required any keyboard or computer work.  In

16  fact, Ms. Lange implied that these jobs did require computer and keyboard work, as she

17  stated that "some accommodations might need to be made for these positions with

18  regards to keyboarding, such as work station modifications and extra break times."  *Id.*

19  However, there is no evidence that accommodations **could** have been made, and the

20  facts suggest that accommodations could not have been made, because when Plaintiff

21  tried to return to work in an externship in the summer of 2003 (where such

22  accommodations were requested), her injuries worsened.  *See* Dr. Henderson's reports

23  dated 1/19/04 (AR 142-43) (her vocational training "is aggravating her symptoms") and

24  2/9/04 (AR 135-36) ("It appears that the patient's work restrictions have not been

25  adhered to").

26       VPA relied upon this vocational consultant report in its initial and final denial of

27

28  gripping, grasping or fine finger manipulation to the right hand."  (AR 145); (5) Dr. Henderson's
    1/19/04 report -- Patrick is temporarily totally disabled. (AR 142-43); (6) Dr. Henderson's 6/7/04
    report -- Patrick is still disabled from working (AR 437-38).

Plaintiff's claim for LTD benefits, finding that the vocational consultant determined Patrick could perform the four jobs listed, considering her "education, training, and experience, and in light of the physical restrictions." *See* 8/11/03 denial lttr (AR 261-64) and 7/9/04 denial lttr (AR 444-48). As discussed below, the report was clearly erroneous in reaching this conclusion.

### 1.    Job descriptions for the positions listed in the report

The vocational report contains a very brief (three-line) description of each of the four jobs, compiled from the DOT (Dictionary of Occupational Titles), along with each job's DOT identification number. *Id.* A similar directory, also compiled by the U.S. Department of Labor, is the Occupational Outlook Handbook (O*NET).

#### a. Credit Analyst

A Credit Analyst reviews files and customer records to analyze the paying habits of customers who are delinquent in paying bills and recommends action. DOT #241.267-022. The analyst then prepares reports with this credit information for use in decision making. O*NET 13-2041.00. As this job involves reviewing files (presumably either on paper or electronically) and preparing a written report, it will necessarily involve computer keyboard/typing and/or fine manipulation.

#### b. Management Analyst

A Management Analyst analyzes business or operating procedures to devise the most efficient methods of accomplishing work. DOT #161.167-018. The analyst analyzes data to determine the nature and extent of the problem he or she is being asked to solve, develops solutions to the problem, and then reports the findings and recommendations to the client "usually . . . in writing." O*NET 13-111.00. The fact that the job involves reviewing data and compiling written reports means, necessarily, that it will require typing/keyboard and mouse work, as well as gripping/fine manipulation. Indeed, the photograph depicting a "management analyst" in the O*NET directory shows a person sitting at a desk, typing on a computer keyboard. *Id.*

06cv1506

### c. Sales Agent

A Sales Agent sells financial products and services to clients for investment purposes, which involves soliciting clients, conducting research regarding products and providing clients with information, completing sales order tickets and performing calculations to monitor client accounts and verify transactions. DOT #250.257-018. Agents also analyze information, prepare reports and handle administrative duties, such as filing and scheduling appointments. O*NET 41-4011.00.  Thus, it is apparent that a sales agent position would involve computer work and typing.

### d. Order Department Supervisor

An Order Department Supervisor coordinates activities of personnel in an order writing department.  The Supervisor plans and initiates order-writing procedures, supervises workers writing master orders and directs the establishment and maintenance of customer order records.  DOT # 169.167-038.  The O*NET does not contain a description of Order Department Supervisors, but indicates in regard to Order Clerks that they "sit for long periods of time in front of computer terminals," and that "[p]roficiency with computer software is increasingly important because most orders are being filled and filed electronically."  O*NET 43-4151.00.  Accordingly, this position would necessarily involve computer keyboard work reviewing the orders and order procedures.

### 2.    VPA did not request an updated vocational report after receiving Plaintiff's appeal

Plaintiff told VPA in her appeal that she could not perform any of these jobs, as they all involved keyboard work.  AR 251.  Plaintiff informed VPA that this was especially so, as now symptoms had flared up in her left hand, elbow and arm, in addition to her right hand, elbow and shoulder.  *Id.*  However, despite this information and Plaintiff's recent medical reports, VPA did not ask the vocational consultant to re-run the search, update its report or do any further analysis.  Instead, in its July 9, 2004 denial of Plaintiff's appeal, VPA relied on the same (erroneous) Vocational Report from June 25, 2003 - over a year earlier.  *See* 7/9/04 denial letter (AR 444-48), referencing 6/25/03 vocational report (AR 269-272).  In *Archuleta v. Reliance Standard Life Ins.*, 504 F.Supp.2d 876, 885 (C.D.

Cal. 2007), the court found that a vocational report which had not been updated and "was more than a year old, render[ed] it of dubious value at the time of the decision."  The court also found the report was flawed in that it failed to consider the impact of the side effects of plaintiff's medication on her ability to work and in that "it failed to ask its vocational consultant to update her report based on the new medical information from plaintiff's doctor."  *Id.* at 885-86. Likewise, the report here is flawed and of dubious evidentiary value in that it was over a year old, had not been updated to reflect Plaintiff's new medical reports from Dr. Henderson, and failed to take into account the impact that working had on aggravating her symptoms.

In summary, the report's conclusion that Plaintiff could perform these four jobs was erroneous.  VPA's reliance on this report to deny Plaintiff's claim for LTD benefits, and its continued reliance on the report without any further analysis -- even after Plaintiff stated in her appeal that she could not do these jobs because they all involved computer work and notwithstanding Dr. Henderson's consistent findings that she was unable to do such work  -- supports a finding that VPA abused its discretion, especially when considered in conjunction with the other factors discussed herein.

### D.    VPA's Failure To Conduct A Physical Examination

An administrator's reliance on a paper review "does not, standing alone, require the conclusion that the plan administrator acted improperly."  *Beckstrand*, 2008 U.S. Dist. LEXIS 83195 at *26, citing *Calvert v. Firstar Fin. Inc.*, 409 F.3d 286, 294 (6th Cir. 2005). However, "the failure to conduct a physical examination -- especially where the right to do so is specifically reserved in the plan -- may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination."  *Calvert*, 409 F.3d at 295. Additionally, when issues of the claimant's credibility are involved," "reliance on such a [paper] review may be inadequate."  *Id.* at 297, n.6.  *See also Beckstrand*, 2008 U.S. Dist. LEXIS 83195 at *26-27 (granting plaintiff's motion for summary judgment for reinstatement of LTD benefits and holding that failure to conduct further examinations, especially given conflicting opinions, "raises questions about the thoroughness and accuracy of the Plan's benefits determination.")

1    The VPA claims manual specifically conferred the right to conduct a physical

2    examination -- "on internal appeal, *an IME may be requested* for physical examination to

3    substantiate a disability."  *See* Def. MSJ Opp at 15, n. 6.  Nonetheless, VPA did not --

4    either upon the initial review or after Plaintiff's appeal -- interview Plaintiff or conduct a

5    physical examination of her.  Such an examination would have been particularly helpful in

6    this case, as Plaintiff's credibility was at issue - Patrick complained of extensive pain, yet

7    VPA felt it was not sufficiently substantiated by objective evidence.  This is especially true

8    in light of the fact that the primary objective evidence relied on by VPA in denying benefits

9    -- the EMG test -- is known to elicit false negative results.  AR 138.  Thus, the Court finds

10   that VPA's failure to interview and/or conduct a physical examination of Patrick raises

11   questions about the thoroughness and accuracy of its investigation and benefits

12   determination, and weighs in favor of a finding of abuse of discretion.

13          **E.    VPA Disregarded Plaintiff's Subjective Evidence of Pain**

14          After Plaintiff entered vocational therapy and began working at an externship, her

15   pain and symptoms in her shoulder, elbow and hand began to worsen.  As she indicated

16   in her February 5, 2004 appeal letter, she had pain and swelling in her right wrist, arm

17   and shoulder, and due to favoring her right arm, she was now experiencing pain and

18   swelling in her left hand and arm. AR 251-255.  She stated that she had "[n]umbness in

19   the fingers, and my hand is constantly swollen.  I'm unable to close my hand at all in the

20   morning." *Id.*  She complained that her "[w]rist and arm have pain and swelling with use,"

21   and that she had "[s]houlder pain and stiffness."  *Id.*  She estimated that her "[p]ain

22   intensity is 3-8 and is on a daily basis."  *Id.* Dr. Henderson noted her symptoms of pain,

23   swelling, numbness and tingling in the fingers in both hands in his January 19, 2004

24   report, and recommended that she be "taken out of her vocational rehabilitation training."

25   AR 142-43.   On June 7, 2004, Dr. Henderson noted a "significant flare-up" of symptoms,

26   stating that "[s]he is now having worsening symptoms of her elbow wrist and even the

27   shoulder," and was "exquisitely tender over the lateral epicondylar area and ERCB with

28   pain with resisted wrist extension." AR 437-38

            While VPA cited some of Plaintiff's complaints of pain and symptoms in its denial

1   letters, it ultimately disregarded her complaints of pain, swelling, stiffness and tenderness,

2   and concluded that she had failed to produce sufficient objective evidence that she could

3   not perform other jobs for which she was qualified.  AR  444-48.  VPA's approach of

4   "disregarding subjective evidence of pain is disapproved in Ninth Circuit precedent."

5   *Caplan v. CNA Fin. Corp.*, 544 F.Supp.2d 984, 992-993 (N.D. Cal. 2008), citing *Saffon*,

6   511 F.3d at 1216 (noting that "individual reactions to pain are subjective and not easily

7   determined by reference to objective measurements")[14]  Thus, VPA's failure to give

8   credence to Plaintiff's complaints of pain or to investigate whether her pain would prevent

9   her from performing other jobs is a factor that weighs in favor of a finding of abuse of

10  discretion.

11

12  **F.    The EMG Test On Which VPA Heavily Relied Was Stated To Produce
        False Negatives**

13         The primary "objective" report on which VPA relied in rejecting Plaintiff's claim for

14  benefits was Dr. Shack's February 3, 2004 EMG report.  AR 137-41. VPA cited Dr.

15  Shack's statements that the "electrodiagnostic study reveals no electrical evidence of

16  entrapment neuropathy," and that there was "no evidence of carpal tunnel (post-op on the

17  right) or cubital tunnel slowing on either side."  AR 138; 7/9/04 Denial lttr (AR 447).

18  However, VPA's denial letter omitted that Dr. Shack specifically qualified his findings by

19  stating: "However, ***this is a difficult diagnosis to make on EMG/NCV, and false

20  negative tests are often seen***." AR 138.  The fact that the EMG test often yields false

21  negatives weakens the reasonableness of VPA's reliance on this report in denying

22  Plaintiff LTD benefits.

23

24  **G.    VPA Disregarded Dr. Henderson's Conclusion That Plaintiff Was**

25         [14] *See also Fair v. Bowen,* 885 F.2d 597, 601 (9th Cir. 1989) ("[D]espite our inability to
     measure and describe it, pain can have real and severe debilitating effects; it is, without a
26   doubt, capable of entirely precluding a claimant from working.  Because pain is  a subjective
     phenomenon, moreover, it is possible to suffer disabling pain even when the degree of pain, as
27   opposed to the mere existence of pain, is unsupported by objective medical findings."); *Prado
     v. Allied Domecq Spirits and Wine Group Disability Income Policy*, 2008 U.S. Dist. LEXIS
28   4295, *26-27 (N.D. Cal., Jan. 22, 2008) (Defendant "may not ignore Plaintiff's subjective pain
     complaints and instead rely solely on objective evidence if evidence of Plaintiff's pain is not
     available.")

**Disabled And Omitted Important Findings From His Reports**

While Defendants are correct that VPA need not "accord special weight to the opinions of a claimant's physician," it nonetheless may not "arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). The Supreme Court affirmed last year in *Glenn*, 128 S.Ct. at 2352, that an administrator abused its discretion when it "emphasized a certain medical report that favored a denial of benefits, [and] deemphasized certain other reports that suggested a contrary conclusion."

Here, VPA relied heavily on the report of Dr. Kaplan (AR 127-29) in support of its denial of LTD benefits. However, numerous deficiencies with respect to Dr. Kaplan's report undermine VPA's reliance on it, particularly in light of Dr. Henderson's consistent findings that Plaintiff was disabled: (1) Dr. Kaplan did not examine or interview Plaintiff; (2) he spent only one day reviewing Plaintiff's medical records and files spanning over a year; (3) he was not asked to and did not analyze whether Plaintiff could perform other jobs; (4) he did not analyze whether Plaintiff's complaints of pain would preclude her from working at other jobs, or request a medical examination to investigate her complaints of pain; (5) he did not address at all Dr. Henderson's findings that Plaintiff was totally disabled, and (6) he was not asked, before the final denial letter was issued, to consider more recent medical reports prepared after his report was written, including Dr. Henderson's June 7, 2004 report which indicated a "significant flare-up" and "worsening symptoms." (AR 437-38).

The reports of Plaintiff's treating doctor, Dr. Henderson, contained his opinion that Plaintiff was "temporarily totally disabled" from January 8, 2003 until May 14, 2003 and again from January 19, 2004 through at least June 7, 2004 -- the date of his last report prior to VPA's denial of Plaintiff's appeal. *See* Dr. Henderson's reports dated 1/18/03 (AR 189-91); 5/14/03 (AR 278-80); 1/19/04 (AR 142-43) and 6/7/04 (AR 437-38).[15] However,

---

[15] VPA discussed Dr. Henderson's 1/19/04 report (AR 142-43) in its final denial letter, but omitted Dr. Henderson's finding that Patrick was temporarily totally disabled. 7/9/04 denial lttr, AR 446.

06cv1506

1   neither the initial nor final denial letter mentioned Dr. Henderson's findings of "temporary

2   total disability." (AR 261-64, 444-48)

3          VPA also disregarded Dr. Henderson's conclusion that once Plaintiff began

4   working again (at an externship), it "aggravat[ed] her symptoms" and caused her to

5   "demonstrat[e] symptoms of carpal tunnel reoccurrence on the right hand and a

6   development on the left hand as well," such that he recommended that she "be taken out

7   of her vocational rehabilitation training."  Dr. Henderson's 1/19/04 report, AR 142-43.

8   Finally, VPA disregarded Dr. Henderson's recommendations that Patrick not perform any

9   computer keyboard and mouse work" or "repetitive forceful gripping, grasping or fine

10  finger manipulation to the right hand."  Dr. Henderson 6/25/03 report, AR 145-47.

11         Another factor that may tend to show an abuse of discretion is a defendant's

12  "cherry-picking" or omission of language from medical records to support a denial of

13  benefits.  For example, in *Saffon*, 522 F.3d at 873, the Ninth Circuit found that the

14  administrator "did not meet its duty to have a meaningful dialogue with its beneficiary in

15  deciding whether to grant or deny benefits" by taking "various of her doctors' statements

16  out of context or otherwise distort[ing] them in an apparent effort to support a denial of

17  benefits."  The court held that because the denial letter omitted relevant language from

18  the report that might support a grant of benefits "it suggests **less deference** should be

19  given to the decision of the claims administrator."  *Id.*  Here, VPA's initial and final denial

20  letters omit the following relevant language from Dr. Henderson's reports:

21         **1. Dr. Henderson's 1/8/03 report**

22         This report (which VPA failed to mention in either denial letter) indicated that Dr.

23  Henderson would continue to treat Patrick under her private insurance for her right

24  shoulder, calcific tendinitis, right lateral epicondylitis, and right carpal tunnel syndrome.

25  He concluded that Patrick "is **currently temporarily disabled** secondary to her calcific

26  tendinitis, epicondylitis, and right carpal tunnel syndrome and will be so for probably the

27  next three months."  AR 189-91.

28         **2. Dr. Henderson's 2/26/03 report**

       VPA cited this report from Patrick's first post-surgery visit (AR 176-77) for the

1   proposition that Patrick was "doing very well" after surgery, and noted the finding in the

2   report that Patrick had "good extension and can almost make a full composite fist" when it

3   initially denied Plaintiff's claim for LTD benefits.  Def. reply at 9; VPA 8/11/03 denial lttr,

4   AR 262.  However, VPA and **omitted** Dr. Henderson's conclusion that Patrick was

5   "***[t]emporarily totally disabled until further notice***." 2/26/03 report, AR 176.

6          **3. Dr. Henderson's 5/21/03 report**

7          VPA cited this report for its findings that Patrick had full shoulder motion and

8   "negative provocative test for carpal tunnel syndrome." 5/21/03 report (AR 150-51); Def.

9   reply at 9; 7/9/04 final denial lttr, AR 445.  However, VPA **omitted** that the report stated

10  that Patrick still ***"reports really no significant change.  She still has pain*** in the

11  anterolateral shoulder.  It is worse with overhead activity.  The pain in the elbow is the

12  same.  It is down the lateral epicondylar area and radiates into the dorsum of the forearm.

13  She still reports swelling and stiffness in the fingers, mainly in the morning and pain at the

14  base of the thumb." AR 150.

15         **4. Dr. Henderson's 1/19/04 report**

16         Dr. Henderson indicated in this report that as a result of Patrick's working at an

17  externship, she complained of symptoms in her left hand, pain, swelling, numbness and

18  tingling in all fingers, and a return of paresthesis in the median nerve distribution.  (AR

19  142-43).  Given her worsening symptoms, Dr. Henderson recommended that she be

20  "taken out of her vocational rehabilitation training," because it "is aggravating her

21  symptoms."  He stated that Patrick was "demonstrating symptoms of carpal tunnel

22  reoccurrence on the right hand and a development on the left hand as well."  He

23  concluded that "[s]he is now ***TTD*** [temporarily totally disabled]."  VPA discussed this

24  report in its final denial letter and the fact that plaintiff was "in vocational rehabilitation,"

25  but **omitted** that Plaintiff was ***unable to continue her rehabilitation*** due to her pain and

26  symptoms, and omitted Dr. Henderson's conclusion that she was now temporarily totally

27  ***disabled***. *See* 1/19/04 rpt (AR 142-43); 7/9/04 denial lttr, AR 446.

28         **5. Dr. Henderson's 2/9/04 report**

       While VPA's final denial letter cited Dr. Henderson's 2/9/04 report for certain

1  positive findings and noted Plaintiff's swelling, numbness and pain (AR 446), it failed to

2  acknowledge Dr. Henderson's finding that "[s]he is really **not having any significant**

3  **improvement**." 2/9/04 report, AR 135

4      **6. Dr. Henderson's 6/7/04 report**

5      VPA's final denial letter **omitted** entirely Dr. Henderson's June 7, 2004 report, in

6  which he reported a "**significant flare-up" of symptoms** in Patrick's right upper

7  extremity.  AR 437-38.  Dr. Henderson stated: "She is now having **worsening symptoms**

8  **of her elbow wrist and even the shoulder**.  She is back in her elbow band and tunnel

9  brace and using ice with improvement."  AR 437.  He stated that she was "exquisitely

10  tender over the lateral epicondylar area and ERCB with pain with resisted wrist

11  extension," the "carpal tunnel is minimally tender with negative provocative tests for

12  carpal tunnel," and that she has "decreased grip strength."  *Id.*  Dr. Henderson indicated

13  that Plaintiff remained **temporarily totally disabled**.  *Id.*  VPA's failure to consider or

14  discuss this most recent report of Plaintiff's worsening condition was indeed a serious

15  omission.[16]

16  _____

17      [16] Defendants contend in their reply that "VPA's denial of Plaintiff's claim was supported by overwhelming evidence," and  list six examples of this "overwhelming evidence" (Def's Reply at 9).  However, Defendants omit other important material from these six reports or take

18  them out of context.  For example:

19      ● **Dr. Collins' 8/8/02 report -** Defendants cite this report for the contention that Plaintiff  had "normal strength and sensation" in her right hand and "[f]ull range of

20  motion at the elbow."  Dr. Collins' 8/8/02 Rpt. (AR 376); Def. MSJ at 5; Def. reply

21  at 9.  However, Defendants omit that the report also found that Plaintiff had "increasing discomfort in her right forearm and elbow," and "numbness in her

22  three fingers."  AR 376.  Furthermore, this report was written nearly two years before the final denial of benefits, and Patrick's hand, elbow and shoulder

23  worsened again in 2004.

24      ● **Dr. Henderson's 12/11/02 report -** Defendants cite this report for its statements that Plaintiff is "better" and her "elbow is quite a bit better."  Dr.

25  Henderson's 12/11/02 Rpt (AR 216); Def. MSJ at 6; Def. reply at 9. However, Defendants omit that the report indicated that Patrick "is now having intermittent

26  pain in the shoulder," (AR 216) and that this report was written 1-1/2 years before VPA's final denial of benefits, and disregard the fact that Patrick's

27  symptoms in her elbow, shoulder and hand flared up again in 2004. AR 216.

28      ● **Dr. Henderson's 2/19/03 report** - Defendants cite this report for its finding that Plaintiff could stand, walk and sit for 8 hours at a time.  (AR 326-327);  Def. MSJ at 6; Def. reply at 9. However, the report also stated that Plaintiff could not drive, could only occasionally do simple grasping and fine manipulation, and could

**H.     The Totality of Factors**

As the Supreme Court held in *Glenn*, 128 S.Ct. at 2351, in determining whether a

claims administrator abused its discretion in denying benefits, the court should take into

account "several different, often case-specific, factors, reaching a result by weighing all

together," where "any one factor will act as a tiebreaker when the other factors are closely

balanced."  *See also Toven*, 2008 U.S. Dist. LEXIS 100445 at  *24-25 ("In theory, any

number of factors might be relevant to such a determination" of whether the Plan abused

its discretion in denying LTD benefits); *Abatie*, 458 F.3d at 968 ("abuse of discretion

analysis allows a court to tailor its review to all the circumstances before it").

Here, VPA failed to ask the question of whether Plaintiff, whose condition improved

after leaving work, having surgery and undergoing physical therapy, but worsened after

working in an externship, would be able to return to another job without her condition

worsening again.  VPA also failed to have a meaningful dialogue with Plaintiff about the

extent and severity of her symptoms, her pain, and specific evidence she would need to

---

never do pushing or pulling w/ her right hand. AR 326-27.

● **Dr. Henderson's 2/26/03 report -** Defendants cite this report for its statement
that Plaintiff was "doing very well" after surgery for carpal tunnel syndrome.
2/26/03 Rpt (AR176-77); Def. MSJ at 6; Def. reply at 9.  However, Defendants
omit the doctor's finding that Plaintiff is **"[t]emporarily totally disabled** until
further notice." AR 176.

● **Dr. Henderson's 5/14/03 report -** Defendants cite this report for the findings
that Plaintiff was "[i]mproved," "[a]mbulatory" "capable of clerical/ administrative"
work and not "totally disabled from any other work."  (AR 278-280); Def. MSJ at
6; Def. reply at 9. However, Defendants omit the restrictions Dr. Henderson
recommends (no keyboard/mouse work, etc.). Furthermore, Defendants neglect
to mention that Plaintiff's symptoms flared up again after her externship work,
and that Dr. Henderson again found her totally temporarily disabled on January
19, 2004. AR 142-43.

● **Dr. Henderson's 5/21/03 report -** Defendants cite this report for its findings
that Plaintiff had full shoulder motion and "negative provocative test for carpal
tunnel." (AR 150-51); Def. reply at 9. However, the report also noted "no
significant change;" plaintiff "still has pain in the anterolateral shoulder," and "pain
in the elbow," "swelling and stiffness in the fingers," and "pain at the base of the
thumb."  AR 150.  Dr. Henderson concluded that Patrick "will not be able to return
to her pre-injury occupation and would be eligible for vocational rehabilitation,"
and reiterated his restrictions for no computer work. AR 151. Again, Defendants
make no mention of the fact that after this vocational training, her symptoms
flared up and worsened, and that Dr. Henderson found her disabled again on
January 19, 2004.

submit to convince them that she was disabled, and/or why her doctor's conclusion that she was disabled was insufficient.  VPA relied on a vocational consultant report which did not analyze whether Plaintiff could actually perform the jobs it listed in view of the fact that she could not perform computer keyboard/mouse work or gripping, and did not request an updated vocational report one year later after receiving Plaintiff's appeal, despite the fact that Plaintiffs' symptoms had significantly worsened since the initial report was prepared. VPA failed to interview Plaintiff or conduct a physical examination, even though its claims manual specifically authorized it do so.  VPA disregarded Plaintiff's complaints of significant pain.  The EMG test on which VPA heavily relied was not sufficient to justify denial of benefits, as it was stated to produce false negatives.  VPA's reliance and emphasis on Dr. Kaplan's report is undermined by the fact that he spent only one day preparing his report, did not examine Plaintiff, did not analyze whether she could perform other jobs or whether her pain would preclude her from working at other jobs, did not address Dr. Henderson's findings that Plaintiff was totally disabled, and did not consider Plaintiff's most recent medical record which indicated a "significant flare-up" and "worsening symptoms."  And finally, although VPA made reference to several of Dr. Henderson's reports, it disregarded his repeated conclusion that Plaintiff was disabled, omitted important findings from his reports, and in its final denial letter failed to consider at all his most recent report confirming Plaintiff's flare-up of symptoms and reiterating his finding that she was disabled.

Based upon the review of the entire Administrative Record, the Court finds and concludes that all of these factors and serious concerns, taken together, demonstrate that VPA abused its discretion in denying Patrick's claim for LTD benefits.  The Court accordingly grants summary judgment in favor of Plaintiff.

## VI.   CONCLUSION

For the reasons set forth herein, the Court:

1.      **GRANTS** Plaintiff's Motion for Summary Judgment [Doc. 78];

2.      **DENIES** Defendants' Motion for Summary Judgment [Doc. 90];

06cv1506

1        3.       **OVERRULES** Plaintiff's evidentiary objections [Doc. 98]; and

2        4.       **SUSTAINS** Defendants' evidentiary objections [Doc. 102].

3            The Court orders the Clerk of Court to enter judgment in favor of Plaintiff, close the

4    case file and terminate this case.

5    **IT IS SO ORDERED**

6    DATED:  July 13, 2009

7    _____

8    Jan M. Adler
     U.S. Magistrate Judge

06cv1506